# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| KENNETH C. GIBSON,<br>     *Plaintiff*,<br><br>     v.<br><br>ANDREW SAUL, COMMISSIONER OF<br>SOCIAL SECURITY,<br>     *Defendant*. | No. 3:20-cv-00145 (KAD)<br><br><br><br><br><br>February 3, 2021 |

## MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION TO REVERSE THE DECISION OF THE COMMISSIONER (ECF NO. 20) AND DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER (ECF NO. 24)

Kari A. Dooley, United States District Judge:

Kenneth Gibson (the "Plaintiff") brings this administrative appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). He seeks to reverse the decision of Defendant Andrew M. Saul, Commissioner of the Social Security Administration (the "Commissioner"), denying his application for supplemental security income benefits ("SSI") pursuant to Title XVI of the Social Security Act (the "Act"). In the alternative, he seeks a remand to the Commissioner for further proceedings. The Commissioner opposes the Plaintiff's claims of error and moves to affirm his decision. For the reasons set forth below, the Plaintiff's motion to reverse (or, in the alternative, to remand) is DENIED and the Commissioner's motion to affirm is GRANTED.

**Standard of Review**

A person is "disabled" under the Act if that person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(D). In addition, a claimant must establish that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 1382c(a)(3)(B).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether a claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 416.920. In brief, the five steps are as follows: (1) the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment" or combination thereof that "must have lasted or must be expected to last for a continuous period of at least 12 months;" (3) if such a severe impairment is identified, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment "meets or equals" an impairment listed in Appendix 1 of the regulations; (4) if the claimant does not establish the "meets or equals" requirement, the Commissioner must then determine the claimant's residual functional capacity ("RFC") to perform his past relevant work; and (5) if the claimant is unable to perform his past work, the Commissioner must next determine whether there is other work in the national economy that the claimant can perform in light of his RFC and his education, age, and work experience. *Id.* §§ 416.920(a)(4)(i)-(v); 416.909. The claimant bears the burden of proof with respect to Step One through Step Four, while the Commissioner bears the burden of proof as to Step Five. *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

It is well-settled that a district court will reverse the decision of the Commissioner only when it is based upon legal error or when it is not supported by substantial evidence in the record. *See, e.g.*, *Greek v. Colvin*, 802 F.3d 370, 374–75 (2d Cir. 2015) (*per curiam*); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotations marks and citation omitted). "In determining whether the agency's findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (*per curiam*) (quotation marks and citation omitted). "Under this standard of review, absent an error of law, a court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the court might have ruled differently." *Campbell v. Astrue*, 596 F. Supp. 2d 446, 448 (D. Conn. 2009). The court must therefore "defer to the Commissioner's resolution of conflicting evidence," *Cage v. Comm'r of Social Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), and can only reject the Commissioner's findings of fact "if a reasonable factfinder would *have to conclude otherwise*," *Brault v. Social Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (*per curiam*) (quotation marks and citation omitted). Stated simply, "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian*, 708 F.3d at 417.

**Procedural History**

On October 14, 2016, Plaintiff filed an application for SSI pursuant to Title XVI of the Act, alleging an onset date of September 1, 2016. (Tr. 412.) He later amended the alleged onset date to October 1, 2016. (*See* Tr. 215–16.) Plaintiff's claim was denied initially on February 16,

2017 (Tr. 296) and on reconsideration on December 6, 2017.  (Tr. 310.)  A hearing was thereafter conducted before Administrative Law Judge ("ALJ") John T. Molleur on October 29, 2018.  (*See* Tr. 209.)  On November 15, 2018, ALJ Molleur issued a written decision denying Plaintiff's application for SSI.  (*See* Tr. 13–26.)

In his decision, ALJ Molleur followed the sequential evaluation process for assessing disability claims.  At Step One, the ALJ found that Plaintiff has not been engaged in substantial gainful activity since the alleged onset date of his disability.  (Tr. 18.)  At Step Two, the ALJ determined that Plaintiff has severe medically determinable impairments consisting of fibromyalgia, degenerative disc disease in the lumbar spine, bipolar II disorder, obsessive compulsive disorder, and opioid related disorder.  (Tr. 18.)  At Step Three, the ALJ concluded that none of Plaintiff's severe impairments met or medically equaled a listed impairment in Subpart P, Appendix 1 at 20 C.F.R. Part 404.  (Tr. 18.)  The ALJ also considered the Plaintiff's fibromyalgia under Social Security Ruling ("SSR") 12-2p. (Tr. 18–19.)  At Step Four, the ALJ determined that Plaintiff had the RFC "to perform sedentary work . . . except the claimant must avoid climbing ladders, ropes, and scaffolds." (Tr. 20.)  The ALJ further found that:

> Other postural activities are limited to no more than occasionally.  He must avoid work at unprotected heights.  He should have no close proximity to mobile machinery or exposed moving machinery parts.  The work should be restricted to that requiring only simple instructions and routine and repetitive tasks.  He must avoid tandem or other team oriented type work.  The work should involve no more than brief and incidental contact with members of the general public.

(Tr. 20.)  Plaintiff did not have any past relevant work that the ALJ found he could assess at Step Four.  (Tr. 24–25.)  At Step Five, the ALJ held that jobs existed in significant numbers in the national economy that Plaintiff can perform, such as a Final Assembler, Document Preparer, and Table Worker.  (Tr. 25–26.)  The ALJ accordingly determined that Plaintiff has not been disabled since the alleged onset date of October 1, 2016.  (Tr. 26.)

The Appeals Council declined Plaintiff's request for review on December 6, 2019, rendering final the ALJ's decision. (Tr. 1.) This appeal followed.

**Discussion**

As an initial matter the Court notes that the record before the ALJ did not include certain medical records which were submitted by the Plaintiff in connection with his request for Appeals Council review. (*See* Tr. 32–208.) Some of these records postdate the ALJ's decision of November 15, 2018. As the Commissioner explains, the Appeals Council considered the new records that predated the ALJ's decision and concluded that "this evidence does not show a reasonable probability that it would change the outcome of the decision." (Tr. 2; *see also* Def.'s Mem. at 5–6 n. 2.) The Appeals Council further found that the records from after November 15, 2018 did not relate to the disability period at issue and indicated that the Plaintiff would need to submit a new claim for SSI if he wished to be considered disabled during this more recent period. (Tr. 2.)

"While a district court can consider new evidence when reviewing an ALJ decision, remand is warranted only upon a showing that the evidence is new and material, and that there is good cause for failure to timely submit it." *Yucekus v. Comm'r of Soc. Sec.*, 829 F. App'x 553, 557 (2d Cir. Oct. 9, 2020) (summary order) (citing 42 U.S.C. § 405(g); *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004)). New "evidence is material if it is 'both relevant to the claimant's condition during the time period for which benefits were denied and probative . . . The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide the claimant's application differently.'" *Milano v. Apfel*, 98 F. Supp. 2d 209, 215 (D. Conn. 2000) (quoting *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988)). This Court must therefore "review the entire administrative record, which includes the

new evidence, and determine, as in every case, whether there is substantial evidence to support the decision of the [Commissioner]". *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (*per curiam*) (quotation marks and citation omitted). Here, there is no question that the evidence submitted to the Appeals Council is "new" evidence, and the Court will address the question of its materiality in the context of analyzing each of the specific grounds for reversal urged by the Plaintiff.[1]

The Plaintiff identifies four alleged errors by the ALJ in rendering his decision which he contends warrant reversal or, in the alternative, a remand for further proceedings. He first asserts that the ALJ's conclusion that he does not meet Listing 12.04 for bipolar II disorder and Listing 12.06 for obsessive compulsive disorder ("OCD") is not supported by substantial evidence in the record. He next advances the same argument with respect to his spinal disorder and Listing 1.04. His third claim of error is that the ALJ assigned insufficient weight to the opinion of Plaintiff's treating physician, Dr. Brian Riordan. And finally, he submits that the ALJ's RFC determination is flawed and unsupported by substantial evidence. These arguments are addressed in turn.

### Substantial Evidence Supports the ALJ's Findings with Respect to the Applicable Listings for Plaintiff's Mental Health Disorders

As noted, Plaintiff challenges the ALJ's conclusion that he did not meet the Listings for bipolar II disorder (Listing 12.04) and OCD (Listing 12.06). Each of these Listings requires that a claimant satisfy the criteria of both paragraphs A and B or the criteria of both paragraphs A and C. The Plaintiff does not argue that the paragraph B criteria are relevant to his condition for either

---

[1] In doing so the Court recognizes that despite the Appeals Council's refusal to consider evidence that accrued after November 15, 2018, evidence created after the ALJ's decision may nonetheless be probative if it "clarif[ies] a prehearing disability and/or diagnoses." *McCarthy v. Colvin*, No. 3:16 CV 1716 (JGM), 2018 WL 495678, at *16 (D. Conn. Jan. 22, 2018) (quotation marks and citation omitted). The Court has accordingly reviewed both the pre-decision and post-decision new evidence submitted by the Plaintiff in reaching its conclusion that the new evidence would not alter the ALJ's conclusion. Because the Court concludes that remand is not warranted on this basis, the Court need not decide whether the Plaintiff has demonstrated good cause for the failure to submit timely the relevant pre-decision medical records to the ALJ—a failure that the Plaintiff attributes to his prior counsel's transition out of his law firm at the time of the Plaintiff's hearing. (*See* Pl.'s Mot. at 3–4.)

Listing and instead asserts that he has satisfied the paragraph A and C requirements for both his bipolar disorder and OCD.

The paragraph A criteria for bipolar disorder require medical documentation of "three or more of the following" characteristics:

> a. Pressured speech;
> b. Flight of ideas;
> c. Inflated self-esteem;
> d. Decreased need for sleep;
> e. Distractibility;
> f. Involvement in activities that have a high probability of painful consequences that are not recognized; or
> g. Increase in goal-directed activity or psychomotor agitation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.A.2.  The paragraph A criteria for OCD require that Plaintiff provide medical documentation of "[i]nvoluntary, time-consuming preoccupation with intrusive, unwanted thoughts" or "[r]epetitive behaviors aimed at reducing anxiety."  *Id.* § 12.06.A.3.

Paragraph C for both disorders requires that:

> Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
>
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

*Id.* §§ 12.04.C, 12.06.C.  The regulations clarify that the criterion in Paragraph C1 is met, in relevant part:

> when the evidence shows that you rely, on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of your mental disorder (see 12.00D). We consider that you receive ongoing medical treatment when the medical evidence establishes that you

obtain medical treatment with a frequency consistent with accepted medical practice for the type of treatment or evaluation required for your medical condition.

*Id*. § 12.00G.2.b.  The regulations clarify that the Paragraph C2 criterion is met:

> when the evidence shows that, despite your diminished symptoms and signs, you have achieved only marginal adjustment. "Marginal adjustment" means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life. We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports (see 12.00D). Such deterioration may have necessitated a significant change in medication or other treatment. Similarly, because of the nature of your mental disorder, evidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time.

*Id*. § 12.00G.2.c.  The regulations include examples of psychosocial supports, such as the help of family members who aid a claimant in his or her basic functioning and daily activities, participation in programs that provide instruction in entry-level work skills and daily living, the receipt of "comprehensive '24/7 wrap-around' mental health services," residence in a hospital or institution that provides 24-hour care, and receipt of "assistance from a crisis response team, social workers, or community mental health workers" who help the claimant with his or her physical needs.  *Id*. § 12.00D.1.  The regulations also recognize that a claimant can meet this standard if he lives alone and does not receive psychosocial supports but has instead "created a highly structured environment by eliminating all but minimally necessary contact with the world outside [his] living space."  *Id*.  "Courts in this Circuit routinely have found that no reasonable fact finder could conclude that a plaintiff could meet this standard when, *inter alia*, the plaintiff functioned mostly independently, including by shopping, going online, traveling independently and managing money, and was observed to have goal-directed thoughts."  *Campbell v. Comm'r of Soc. Sec*., No. 1:19-CV-03215 (SDA), 2020 WL 5641200, at *12 (S.D.N.Y. Sept. 22, 2020) (citing cases).

Here, the ALJ did not render specific findings with respect to the Paragraph A criteria.  As for the Paragraph C requirements, the ALJ found that they were not satisfied for either disorder—noting that the Plaintiff "lives at home and has not required inpatient treatment or assisted residential living." (Tr. 20.)  In seeking reversal of the ALJ's decision, the Plaintiff argues vaguely that "there was ample evidence in the record supporting the finding that Claimant was suffering from severe limitations as a result of the Bipolar II Disorder and Obsessive Compulsive Disorder." (Pl.'s Mem. at 19.)  The evidence he cites consists primarily of records documenting Plaintiff's symptoms, such as his reports of hearing voices,[2] lack of sleep and appetite, mood swings, and "apocalyptic nightmares."  (*See, e.g.*, Tr. 55, 60, 71, 83, 96, 103, 105, 113.)  However, even assuming *arguendo* that Plaintiff's symptoms satisfy the Paragraph A criteria for bipolar disorder and OCD, the ALJ's conclusion that the Plaintiff cannot satisfy the Paragraph C requirements is supported by substantial evidence.

More specifically, while the record indicates that Plaintiff received outpatient mental health care for his mental health conditions over a period spanning more than two years, the record lacks evidence of marginal adjustment—*i.e.*, that Plaintiff exhibited "minimal capacity to adapt to changes in [his] environment or to demands that are not already part of [his] daily life" or a deterioration in his mental capacity evidenced by, for example, the inability to function outside of his home "without substantial psychosocial supports."  20 C.F.R. Pt. 404 Subpt. P, App. 1, § 12.00G.2.c.   To the contrary, the record reveals numerous instances of the Plaintiff engaging independently in a wide range of activities outside of the home on an ongoing basis without any apparent psychosocial supports.  (*See, e.g.*, Tr. 610 (treatment note from August 2016 in which

---

[2] While the Plaintiff refers to these as "auditory hallucinations," as the Commissioner notes, Plaintiff's treatment providers instead appeared to interpret these reports as manifestations of the Plaintiff's inner speech as opposed to delusions or psychotic episodes. (*See, e.g.*, Tr. 54–55, 105.)

Plaintiff described having a great time on an 11-day camping trip with his friend and how "he fishes all night long"); Tr. 575 (March 2016 therapy note stating that the Plaintiff went to a museum with friends and also visited friends in New York); Tr. 606 (notes following therapeutic injection administered in September 2016 in which the Plaintiff reported having gone "out last night at 01:30 am to go fishing on the Long Island Sound, and then slept on the beach"); Tr. 609 (note following another therapeutic injection in September 2016 where Plaintiff reported being in a good mood since having returned from a fishing trip to Cape Cod); Tr. 603 (treatment note from October 2016 noting that Plaintiff was planning to try to volunteer for a local arts organization, and additionally described "attending a party yesterday and he had such a great time"); Tr. 602 (treatment note from November 2016 stating that Plaintiff "[u]sed to go fishing 3x/week, lately once a week"); Tr. 776 (treatment note from March 2018 in which Plaintiff reported "that he had good time with his friend in MA for past weekend" and was planning to start fishing in mid-April eight hours a day, three days a week); Tr. 784 (treatment note from May 2018 in which Plaintiff "states that overall he feels better, more energetic and motivated . . . has been helping drive his friend to doctors appointments, painting, writing more music and started fishing again").) [3]

The record also reveals that the Plaintiff's concentration, memory, judgment, fund of knowledge, impulse control, and orientation to person, place, and time were consistently deemed intact, average, and/or "good." (*E.g.*, Tr. 577, 602, 616, 621, 753.) This further supports the ALJ's finding that the Plaintiff did not satisfy the paragraph C criteria. *See Handau v. Saul*, No. 3:19-CV-616 (RMS), 2020 WL 4218229, at *10 (D. Conn. July 23, 2020) (finding absence of marginal

---

[3] While some of these records predate the alleged onset date of October 1, 2016, the ALJ did consider them in rendering his decision (*see* Tr. 23) and the Plaintiff does not challenge such consideration. Where, as here, a claimant alleges an onset date within 12 months of the filing of his application, the regulations provide that the Commissioner "will develop your complete medical history beginning with the month you say your disability began unless we have reason to believe your disability began earlier." 20 C.F.R. § 404.1512(b)(1)(ii).

adjustment where, "[t]he plaintiff reported being able to drive, grocery shop, feed the dog, and do laundry, . . . [s]he lived independently with her husband who worked outside the home, and she traveled to Thailand to sightsee and Phoenix to visit her son," and "treatment notes . . . reflect normal attention span, intact short term and remote memory, average intelligence, average fund of knowledge, and orientation to person, place and time").

Nor does any of the new evidence submitted by the Plaintiff—much of which stems from the relevant disability period—contradict or call into question the ALJ's findings. Rather, the new evidence corroborates the ALJ's finding that the Paragraph C criteria were not satisfied by revealing numerous instances of the Plaintiff's functioning outside of the home and with friends. (*See, e.g.*, Tr. 71 (treatment note from follow-up visit for medication management in November 2017 indicating "[t]he option of therapy discussed, pt. is not interested in . . . states that been in therapy since age of 12" and is "tired of it," and reporting that Plaintiff "keeps himself busy with listening to music, playing guitar not often, some recording and videos"); Tr. 63 (treatment note from December 2017 in which Plaintiff expressed interest in using the pool at the Y with friends and in considering the Y's exercise programs); Tr. 65 (another December 2017 treatment note in which Plaintiff indicated that he had been engaged in making music, and writing and recording lyrics over the past few weeks).) There is no evidence that the Plaintiff required structured support tantamount to the examples provided in Listing 12.00D; in fact, Plaintiff's mental health care providers did not consider him to require a more intensive level of care than outpatient treatment. (*See, e.g.*, Tr. 67 (treatment note observing that "Pt continues to be appropriate for outpatient treatment" in December 2017); Tr. 56 (same, in February 2018); Tr. 794 (same, in June 2018).) In sum, these treatment records support the ALJ's determination that the Plaintiff failed to display

only marginal adjustment and that his bipolar disorder and OCD did not meet the paragraph C

criteria, and Plaintiff's citation to the record does not compel a different conclusion.

### Substantial Evidence Supports the ALJ's Findings with Respect to the Plaintiff's Spinal Disorder

The ALJ evaluated the Plaintiff's degenerative disc disease under Listing 1.04, which

encompasses "[d]isorders of the spine . . . resulting in compromise of a nerve root . . . or the spinal

cord." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.  To satisfy this Listing the impairment must be

accompanied by:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

*Id.*[4]

The ALJ determined that Plaintiff's impairment does not meet or equal the requirements

of this Listing.  (Tr. 19.)  Despite Plaintiff's complaints of disabling pain due to his degenerative

disc disease of the lumbar spine, the ALJ found that:

---

[4] The Plaintiff does not specify which of these criteria he believes he satisfied.  However, with respect to paragraph B, the Plaintiff does not cite to any evidence indicating that he suffered from spinal arachnoiditis and he makes no argument that might reasonably be construed as involving the paragraph B criteria. The Court does not therefore further address the paragraph B criteria.

the medical evidence of record does not demonstrate that he has the limited range of motion, muscle spasms, muscle atrophy, motor weakness, sensory loss, or reflex abnormalities associated with intense and disabling pain.   On the contrary, his musculoskeletal examinations repeatedly showed negative findings, no lower extremity edema and his range of motion in the bilateral upper and lower extremities were normal, intact, and symmetric.

(Tr. 22.)  The ALJ acknowledged Plaintiff's testimony that he uses two canes to ambulate but found that "the record repeatedly shows normal gait, posture, and strength, without any issues of balance," as well as evidence of a negative straight leg raising test.  (*Id*.)  While Plaintiff testified that he cannot walk more than 20 minutes, the ALJ found that such testimony was contradicted by Plaintiff's account of getting lost in the woods with his friends during a camping trip, during which he reported taking two hours to walk back to the parking lot.  (*Id*.)  Similarly, the ALJ observed that Plaintiff's testimony that he had difficulty bending over to pick up his keys was undermined by evidence that he was recently engaged in designing a new studio space that required him to crawl under desks.  (Tr. 23.)  The ALJ further noted that Plaintiff's complaints of disabling back pain were not accompanied by evidence of frequent or intense treatment, including physical therapy.  (Tr. 22.)  The ALJ took note of an MRI of Plaintiff's lumbar spine from April 2017 which "showed moderate nerve root impingement and small central disc extrusion but with only mild stenosis," which resulted in discussions of surgery but no evidence that Plaintiff actually followed up with surgical intervention.  (Tr. 22.)

Plaintiff argues that the ALJ's decision contravenes the evidence that his symptoms and limitations were consistent with the findings of the April 2017 MRI (Tr. 144) as well as a subsequent MRI from December 2018, which was not part of the record before the ALJ.  (Tr. 135.) However, even accepting that the December 2018 MRI along with the other new evidence that the Plaintiff cites is relevant to the disability period at issue, and thus may be included in the record as a whole, it would not materially alter the ALJ's decision that Plaintiff could not satisfy the totality

of the criteria in either paragraphs A or C—a conclusion which is supported by substantial evidence.

First, as noted previously, to satisfy the paragraph A requirements Plaintiff would need to show "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A. The ALJ found that Plaintiff's MRI of April 2017 revealed "moderate nerve root impingement." (Tr. 22; *see* Tr. 144 (identifying "[l]arge disc extrusion at L5-S1 that is predominantly right-sided but also left-sided and which likely involves one or more nerve roots including the right S1 nerve root").)[5]  Despite this apparent evidence of nerve root compression, the ALJ determined that Plaintiff could not meet the Listing because the record lacked evidence of the requisite limitation of motion, motor loss or weakness, sensory or reflex loss, and positive straight leg raise testing— noting instead that Plaintiff's "musculoskeletal examinations repeatedly showed negative findings." (Tr. 22.)

With respect to the paragraph A criteria, the record is somewhat mixed.  For example, much of the evidence indicates that Plaintiff's reflexes were abnormal (Tr. 35, 38, 41, 179, 200, 712, 714, 724, 770, 772), and there is less evidence tending to suggest that his reflexes were symmetric.  (Tr. 623, 719.)  Likewise, much of the record evidence signifies that his range of motion ("ROM") was "deferred" (Tr. 35, 38, 179, 200, 712, 714, 724), while there is minimal evidence indicating that his ROM was full, or normal.  (Tr. 41, 201, 769.)  On the other hand, the evidence largely indicates that motor examinations of the Plaintiff's lower extremities were

---

[5] The December 2018 MRI, which postdated the ALJ's decision, rendered the same result—concluding that the disc extrusion was overall "quite similar to that on the prior study."  (Tr. 135.)

consistently deemed normal (Tr. 35, 38, 179, 201–02, 623, 712, 714, 724, 771–72), and Plaintiff

cites no evidence to the contrary.  Thus, even if certain of the paragraph A criteria could be found

in the Plaintiff's favor, at a minimum, substantial evidence supports the ALJ's conclusion that

Plaintiff did not suffer from the requisite motor weakness or loss as described in this Listing.  This

alone requires affirmance of the ALJ's decision, because in order "[f]or a claimant to show that

his impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment

that manifests only some of those criteria, no matter how severely, does not qualify."  *Marchetti*

*v. Colvin*, No. 13-CV-02581 (KAM), 2014 WL 7359158, at *10 (E.D.N.Y. Dec. 24, 2014) (quoting

*Sullivan v. Zebley*, 493 U.S. 521, 530 (1991)); *see also Ramirez Morales v. Berryhill*, No. 6:17-

CV-06836 (MAT), 2019 WL 1076088, at *3 (W.D.N.Y. Mar. 7, 2019) (explaining that the Social

Security Administration has "specified that all of the requirements of Listing 1.04(A) must be

simultaneously present on examination and continue, or be expected to continue, for at least 12

months, in order for a disorder of the spine to meet the Listing at step three. . . . In other words,

'when the listing criteria are scattered over time, wax and wane, or are present on one examination

but absent on another, the individual's nerve root compression would not rise to the level of

severity required by listing 1.04A.'") (quoting Social Security Acquiescence Ruling (AR) 15-1(4),

*Radford v. Colvin: Standard for Meeting the Listing for Disorders of the Spine With Evidence of*

*Nerve Root Compression*, 80 FR 57418-02, 2015 WL 5564523 (Sept. 23, 2015)).

Moreover, Listing 1.04A also requires evidence of positive straight leg raising, which the

ALJ found was lacking.  Indeed, the record appears to include more frequent occurrences of

negative straight leg raise tests than positive straight leg raise tests.  (*Compare* Tr. 142, 203, 714,

719, 772 (positive or equivocal results) *with* Tr. 35, 38, 179, 200, 202, 712, 724, 766 (negative

results).)[6]   To the extent the Plaintiff's medical records were at times inconsistent, as noted previously, the ALJ was entitled to resolve conflicting evidence, *see Cage*, 692 F.3d at 122, and this Court can only reject the Commissioner's findings of fact "if a reasonable factfinder would *have to conclude otherwise*," *Brault*, 683 F.3d at 448 (quotation marks and citation omitted).   For these reasons, the ALJ's decision on this issue must be affirmed.

With respect to the paragraph C requirements, although the MRIs cited by the Plaintiff did indicate mild or moderate stenosis (Tr. 135, 144), substantial evidence supports the ALJ's determination that Plaintiff's gait and ambulation were not sufficiently compromised so as to satisfy the Listing.   Paragraph C requires that the spinal stenosis result in the claimant's "inability to ambulate effectively," which is defined as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities."   20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B.2.b(1).   While the record does indicate that Plaintiff used a single cane at times to assist with walking (*see e.g.*, Tr. 142, 320, 623, 712, 724, 769),[7] the regulations require that the claimant be unable to ambulate independently "without the use of a hand-held assistive device(s) that limits the functioning of *both* upper extremities" to satisfy this criterion.   20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00.B.2.b(1) (emphasis added); *see also id.* § 1.00.B.2.b(2) (providing, as "examples of ineffective ambulation," *inter alia*, "the inability to walk without the use of a walker, two crutches or two canes").   The fact that Plaintiff used a single cane to assist with walking therefore does not satisfy the Listing.   And while Plaintiff did testify that he sometimes used two canes (Tr. 221), the

---

[6] As the Commissioner notes, it is also unclear from the record whether those straight leg raising tests that were positive yielded such a result in both the sitting and supine positions as required by the Listing.

[7] In a treatment note from Dr. Riordan dated October 29, 2018, which was submitted after the hearing, he observed that the Plaintiff ambulated with bilateral canes (Tr. 204) but Dr. Riordan otherwise observed the Plaintiff to ambulate with one cane, as documented in the other treatment notes cited herein.

ALJ was entitled to discredit this testimony by considering the other evidence noted above tending to negate a finding that the Plaintiff suffered from severe issues with ambulation and balance (*see* Tr. 22)—as well as contrary evidence demonstrating the Plaintiff's prolonged engagement in activities such as camping and fishing. *See Hofsommer v. Berryhill*, 322 F. Supp. 3d 519, 530 (S.D.N.Y. 2018) ("[W]here an ALJ gives specific reasons for finding the claimant not credible, the ALJ's credibility determination 'is generally entitled to deference on appeal'") (quoting *Selian*, 708 F.3d at 420).

### Whether the ALJ Failed to Accord Proper Weight to the Opinion of the Plaintiff's Treating Physician

The Plaintiff next argues that the ALJ improperly discounted the opinion of Dr. Brian Riordan, the Plaintiff's treating physician for his fibromyalgia condition. Dr. Riordan had treated the Plaintiff since at least 2015. Dr. Riordan offered a Medical Source Statement dated October 19, 2018 in which he opined, *inter alia*, that the Plaintiff: can walk for only one city block without rest or severe pain; can sit or stand for only fifteen minutes at a time; can sit and stand/walk in combination for a total of less than two hours in an eight-hour workday; needs a job in which he can walk for about 15 minutes at a time every 45 minutes throughout the workday and take unscheduled breaks for rest approximately two to three times per day; can never lift 50 lbs., rarely lift 20 lbs., and only occasionally lift 10 lbs. or less; can never twist, stoop, or crouch/squat and can only rarely climb ladders and stairs; would be off-task for 25% or more of a typical workday and is likely to be absent from work more than four days per month as a result of his impairment; and is not capable of "low stress' work. (Tr. 811–15.) The ALJ afforded Dr. Riordan's "opinion little weight because he did not provide any explanation to the opinion found, nor did he cite to any treatment notes to support his opinion," and instead relied upon the Plaintiff's "self-report." (Tr. 24.)

17

"According to [the treating physician] rule, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting the regulation presently codified at 20 C.F.R. § 404.1527(c)(2)).[8] "[I]f the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "In doing so, it must 'explicitly consider' the following, nonexclusive '*Burgess* factors': '(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Id.* at 95–96 (quoting *Selian*, 708 F.3d at 418) (citing *Burgess*, 537 F.3d at 129). "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight . . . is a procedural error," yet a reviewing court can nonetheless affirm the ALJ's decision if "a searching review of the record" ensures it "that the substance of the treating physician rule was not traversed." *Id.* at 96 (quotation marks and citation omitted). In other words, if "the record otherwise provides 'good reasons' for assigning 'little weight'" to the treating physician's opinion, the ALJ's decision should be affirmed. *See id.*

The Plaintiff argues that the ALJ overlooked Dr. Riordan's treatment notes, which document his findings of the Plaintiff's abnormal gait with demonstrated stooping, the Plaintiff's complaints of weakness and pain in his leg, and his compromised range of motion with occasional

---

[8] On January 18, 2017, the Social Security Administration promulgated final rules that significantly change the way the Commissioner considers medical opinion evidence and that were made effective March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulation, 20 C.F.R. § 404.1520c, applies only to claims filed on or after March 27, 2017. Accordingly, because the Plaintiff's claims were filed before this date, this court applies the regulations in effect prior to March 27, 2017.

positive straight leg exam results.[9]  It is true that such symptoms are documented throughout many of Dr. Riordan's records; however, it is not apparent that such symptoms are consistent with or result in the limitations attributed to the Plaintiff in Dr. Riordan's Medical Source Statement.  As noted previously, many of Dr. Riordan's notes contain mixed prognoses—noting gait, reflex, and range of motion issues yet indicating that Plaintiff's lumbosacral spine was normal in appearance and that the strength in his lower extremities was all normal.  (*E.g.*, Tr. 35, 38, 179, 623, 724).  In addition, some of Dr. Riordan's notes suggest that the Plaintiff's physical limitations were not as disabling as indicated in his Medical Source Statement.  (*See* Tr. 37–38 (September 2017 treatment note that the Plaintiff has "been doing a lot of walking," is "[o]verall stable" and "[f]airly good functional level and adequate analgesia"); Tr. 153 (December 2017 note: "Overall stable"; "Fair analgesia"; "Good functional level"); Tr. 623 (October 2016 note: "Exam is fairly benign"; "No red flags on history"); Tr. 770 (April 2018 note: "Analgesia is adequate. Functional level is good").)

Furthermore, as the Commissioner notes, Dr. Riordan's opinion was also inconsistent with the opinions of the State agency consultants who reviewed the Plaintiff's file at the reconsideration level, and whose opinions the ALJ afforded greater weight.  (*See* Tr. 24.)   Dr. Phyllis Sandell indicated that the Plaintiff could fulfill sedentary work[10] based on her opinion that he could, *inter alia*, stand and/or walk for two hours and sit with normal breaks for more than six hours on a sustained basis during an eight-hour workday. (Tr. 324–26.)  Dr. Mary Ellen Menken also opined

---

[9] The Plaintiff cites to pages 145 through 208 of the administrative record, which is part of the new evidence that was not before the ALJ.  However, some of Dr. Riordan's treatment records were included in the original administrative record before the ALJ.  (*See* Tr. 622–631; 709–714; 720–735; 769–772.)  The Court has reviewed the new evidence and concludes that it is not "material" in so far as it is not likely to have changed the decision of the Commissioner and thus does not warrant a remand to the ALJ.  *See Milano*, 98 F. Supp. 2d at 215.

[10] The State agency consultants assessed Plaintiff at the level of "RFC 1," which refers to Table No. 1 at 20 C.F.R. § Pt. 404, Subpt. P, App. 2, captioned "Residual Functional Capacity: Maximum Sustained Work Capability Limited to Sedentary Work as a Result of Severe Medically Determinable Impairment(s)."

that Plaintiff was capable of sedentary work based on her opinion that the Plaintiff was, *inter alia*, able to: "understand & remember simple information adequately," "sustain attention, persistence & pace adequately to perform simple tasks for 2-hour periods during the course of a normal workday/workweek," "manage basic work-related social interactions with supervisors & coworkers adequately," "respond appropriately to basic supervisory instruction and criticism," and "respond appropriately to simple, routine changes in the work setting." (Tr. 326–28.) The ALJ was entitled to afford greater weight to these opinions than to that of Dr. Riordan. *See, e.g.*, *Gilliam v. Comm'r of Soc. Sec.*, No. 17-CV-03764 (ER) (BCM), 2018 WL 9837921, at \*12 (S.D.N.Y. Sept. 5, 2018), *report and recommendation adopted sub nom. Gilliam v. Berryhill*, 2019 WL 5188946 (S.D.N.Y. Oct. 15, 2019) (ALJ did not "err in assigning 'great' weight to the opinion of state agency review psychologist" where the opinion "accorded with the record as a whole"); *Bernard v. Colvin*, No. 2:14-CV-148 (JMC), 2015 WL 4949300, at \*11 (D. Vt. Aug. 19, 2015) ("The regulations clearly permit the opinions of agency consultants to override those of treating physicians, when the former are more consistent with the record evidence than the latter.").

Finally, Dr. Riordan's Medical Source Statement was inconsistent with, and in fact stood in stark contrast to, the multiple references throughout the medical records indicating that the Plaintiff enjoys significant non-work related activities such as camping, fishing, writing songs, and producing music videos. (*See* slip op. at 9–11, *supra*.) *Cf., e.g., Browne v. Comm'r of Soc. Sec.*, 131 F. Supp. 3d 89, 99 (S.D.N.Y. 2015) (ALJ properly discounted treating physician's opinion where, *inter alia*, it conflicted with the plaintiff's own self-reports of being able to prepare his own meals, iron and do laundry, use public transportation, shop, go to the clinic, and walk for five blocks before needing to rest).

**Whether the ALJ's RFC Determination is Supported by Substantial Evidence**

Finally, the Plaintiff argues that the ALJ's conclusion that the Plaintiff could engage in sedentary work with certain restrictions is contrary to the record as a whole. On this issue "the Plaintiff has the burden to prove a more restrictive RFC than the ALJ found." *Salerno v. Berryhill*, No. 19-CV-00627 (KHP), 2020 WL 882006, at *10 (S.D.N.Y. Feb. 24, 2020). Plaintiff principally relies upon Dr. Riordan's opinion that Plaintiff can only sit for less than two hours out of an eight-hour workday in arguing that he cannot perform even sedentary work. (*See* Tr. 812.) However as discussed previously, the ALJ appropriately discounted Dr. Riordan's opinion based on its lack of consistency with the other record evidence.

Plaintiff also argues that the ALJ failed to account adequately for the evidence demonstrating that Plaintiff walked with a limp and needed one or two canes to assist with ambulation, as well as the evidence that Plaintiff needed to change positions frequently. On the former issue the ALJ found that Plaintiff's "findings for normal gait and normal sensory examinations suggest that the claimant had preserved ability for standing and walking within the limitations of the sedentary residual functional capacity." (Tr. 22.) While the record is mixed, Plaintiff correctly notes that it includes ample documentation of his exhibiting an abnormal gait or limp. (*E.g.*, Tr. 623, 712, 714, 721, 724, 765.) However as discussed *supra*, the ALJ's conclusion that the Plaintiff's sensory examinations otherwise yielded normal strength findings is supported by substantial evidence. And given the abundance of treatment notes describing the Plaintiff's ongoing engagement in camping and fishing activities, the ALJ's observation that such anecdotal evidence provided by the Plaintiff "undermine[d] the consistency and supportability of the claimant's allegations" (Tr. 22) is likewise supported by substantial evidence in the record. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (*per curiam*) ("When determining a claimant's

RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.") (internal citations omitted).  As for the ALJ's purported failure to address Plaintiff's need to change positions frequently (*see* Pl.'s Mem. at 28), the Plaintiff does not cite to any evidence that the ALJ overlooked that would support a more restrictive RFC.

The Plaintiff further challenges the ALJ's alleged failure to consider fully his mental impairments in assessing the RFC.  Plaintiff cites the opinion of his treating mental health provider, Melanie St. Raymond, a licensed clinical social worker who observed that the Plaintiff reportedly: struggles with depression and passive suicidal ideation; "often uses poor judgment + impulse control as he is easily frustrated"; "reports obsessive behaviors including: counting, rumination, flashbacks"; and tends to isolate himself due to his frustration in interacting with others.  (Tr. 704–07.)  Plaintiff summarily asserts that these characteristics would result in the Plaintiff being significantly off-task at work, render him unable to tolerate workplace changes or to maintain persistence and pace, and would result in chronic absenteeism.  (Pl.'s Mem. at 29–30.)  First, Ms. Raymond did not indicate how any of these behaviors would translate into workplace problems or limitations.  Counsel's opinion in this regard is therefore not supported by the record evidence. Further, despite the Plaintiff's contention, the ALJ did take this cited evidence into account; yet he afforded Ms. Raymond's statement only little weight, concluding that "it is reliant upon the claimant's self-report" and contains "no discussion of the objective medical evidence of record or mental status examinations."  (Tr. 24.)  And even though he afforded Ms. Raymond's opinion little weight, the RFC clearly accounted for some of these behaviors and the Plaintiff's mental health limitations insofar as it required that "[t]he work should be restricted to that requiring only simple

instructions and routine and repetitive tasks. He must avoid tandem or other team oriented type work. The work should involve no more than brief and incidental contact with members of the general public." (Tr. 20.) The Court thus perceives no error in the ALJ's consideration of these alleged mental health symptoms. *See Major v. Saul*, No. 3:19-CV-01500 (SALM), 2020 WL 5793468, at *13 (D. Conn. Sept. 29, 2020) ("A plaintiff cannot meet his burden of proving a more restrictive RFC by highlighting evidence the ALJ considered and arguing that it should have been weighed or considered differently") (quotation marks and citation omitted).

Lastly, the Plaintiff cites the testimony of the vocational expert at the Plaintiff's hearing, who testified that a person of the Plaintiff's age, education, and work experience who was limited to sedentary work with the other limitations set forth in the RFC would not be able to sustain competitive employment if, in addition to the limitations in the RFC, he were to require unscheduled breaks of approximately 60 to 90 minutes each day above any scheduled breaks, or if he were to be absent from work on an unscheduled basis for two to three days per month. (Tr. 257–58.) The Plaintiff argues that this opinion necessitates a finding of disability in light of Dr. Riordan's opinion that Plaintiff's health conditions would render him absent from work more than four days per month, and require that he be off task more than 25% of each workday. (Tr. 813–14.) However, for the reasons previously discussed, the ALJ was entitled to discount Dr. Riordan's opinion and the hypothetical presented to the vocational expert is therefore of no moment.[11] For these reasons, the Plaintiff has not met his burden of establishing a more restrictive RFC than that identified by the ALJ with respect to either the physical limitations or the limitations occasioned by his mental health impairments.

---

[11] If the Court had agreed with the Plaintiff that the ALJ improperly discounted Dr. Riordan's opinion, the testimony of the vocational expert would support a request for an outright reversal, rather than a remand. As the Court has found no error in the discounting of Dr. Riordan's opinion, this argument necessarily fails.

**Conclusion**

For the foregoing reasons, the Plaintiff's motion to reverse is denied and the Commissioner's motion to affirm is granted.  The Clerk of the Court is directed to enter judgment in favor of the Defendant and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 3rd day of February 2021.


_/s/ Kari A. Dooley_
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE